IN RE the MARRIAGE OF:

Jacqueline C. SCHMIDT, Petitioner-Appellant,

v.

Darwin SCHMIDT, Respondent-Respondent.

Court of Appeals

*No. 96–3699. Submitted on briefs June 5, 1997.—Decided July 16, 1997.*

(Also reported in 569 N.W.2d 74.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Michael J. Backes* of *Law Offices of Michael J. Backes* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Ellen Turner Maxon* of *Law Offices of Gerard F. Kuchler* of Waukesha.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J.   This case concerns the management of civil litigation when one of the parties is incarcerated. The precise matter we examine is how a court solves the problem of moving the case towards resolution in light of the fact that the incarcerated party may not be able to personally appear at the proceedings.

## BACKGROUND

The facts which gave rise to this appeal are brief and undisputed. In March 1995, Jacqueline C. Schmidt petitioned for a divorce from Darwin Schmidt. When Jacqueline initiated the proceedings, Darwin was accused of domestic abuse charges involving Jacqueline and was being held at the Waukesha County Jail. Later, in June 1995, Darwin was found guilty of attempting to arrange the murder of Jacqueline and was sentenced to six years imprisonment. He was then transferred to the Columbia Correctional Institution.

Jacqueline and Darwin disputed many of the issues related to their divorce, including finances, child placement, support and visitation. By October 1995, the county's family court counseling service determined that mediation would not succeed and the court accordingly scheduled the matter for trial in July 1996.

Roughly three weeks before trial, Darwin, through his attorney, moved for an order directing the Waukesha County Sheriff to transport him to Waukesha so that he could attend the proceedings. Darwin claimed that he did not have enough money to cover these transportation expenses.

The trial court denied Darwin's motion to transport him to the Waukesha County Courthouse for trial. The trial court further ordered, sua sponte, that the trial would be adjourned until Darwin was released from prison, thereby permitting his "personal appearance" at the proceedings.

Jacqueline later asked the court to reconsider its decision to adjourn the proceedings. She asserted that Darwin had only intended to "fashion a means to delay these proceedings" and that Darwin could appear by telephone. The court nonetheless affirmed its decision to delay the trial.

Subsequently, Jacqueline filed a petition with this court seeking leave to appeal. We granted her petition and now take the opportunity to examine the issues that are involved when a court faces a civil case (not related to the conditions of confinement) in which one of the parties is incarcerated.[1]

## DISCUSSION

**[1]**

When a court faces a case in which one of the litigants is incarcerated, a preliminary question it must resolve is whether the case can still move toward resolution or whether it must be held in abeyance until the incarcerated party is released. If the court finds that the case should proceed, and that to proceed the incarcerated party must appear in person, the court has authority to order that the incarcerated person be brought to the courthouse. This is achieved by issuance of a writ of habeas corpus *ad testificandum. See State ex rel. Rilla v. Circuit Court*, 76 Wis. 2d 429, 434, 251 N.W.2d 476, 479–80 (1977); *see also* § 782.44, STATS.[2]

These two determinations—if the case should proceed and how the case should proceed—are discretionary choices that rest on a variety of factors.

---

[1] This has been a recurring issue before the trial courts. We have identified three unpublished cases and one other pending case in which an incarcerated party claimed that the trial court should have permitted him or her to personally appear at the proceedings.

[2] This statute is part of ch. 782, STATS., which addresses habeas corpus; it specifically provides:

> **782.44  Prisoner brought for trial or as witness.** This chapter does not restrain the power of courts to issue a writ of habeas corpus, to bring before them any prisoner for trial or as a witness.

*See Rilla,* 76 Wis. 2d at 434, 251 N.W.2d at 480; *see also Stone v. Morris,* 546 F.2d 730, 735 (7th Cir. 1976). We have surveyed case law discussing the factors that are involved,[3] and we conclude that the court needs to make inquiries on three different issues. They are: (1) the nature of the case; (2) the practical concerns raised by having the prisoner appear; and (3) the alternative methods of providing the prisoner with access to the hearings. We will now explore these inquiries in more detail. Following this discussion, we will briefly outline the standards that the court applies when it considers these three factors. Since incarcerated parties are likely to be indigent, we will provide some guidance regarding how a person's ability to pay for the costs of transportation from prison to court affects the analysis. Finally, we will examine the decision that the circuit court reached in this case.

### A. The Factual Inquiries

#### 1. The Nature of the Case

When a court assesses the nature of the case it is concerned with two matters. One, it is gauging how the incarcerated party's confinement may affect the outcome of the case. For instance, the intensity of discovery might be important. An incarcerated person

---

[3] *See Stone v. Morris,* 546 F.2d 730, 735–36 (7th Cir. 1976); *Maurer v. Pitchess,* 530 F. Supp. 77, 80–81 (C.D. Cal. 1981), *rev'd in part,* 755 F.2d 936 (9th Cir. 1985); *Farmer v. Robinson,* 85 F.R.D. 7, 9–10 (N.D. Cal. 1979); *Seybold v. Milwaukee County Sheriff,* 276 F. Supp. 484, 487–88 (E.D. Wis. 1967); *State ex rel. Sykes v. Circuit Court,* 109 Wis. 2d 200, 202–03, 325 N.W.2d 720, 721–22 (1982) (Steinmetz, J., concurring); *State ex rel. Rilla v. Circuit Court,* 76 Wis. 2d 429, 434, 251 N.W.2d 476, 480 (1977).

faces obvious impediments to conducting discovery. Thus, if the case involves complex factual details, the only solution may be to put the case on hold. Moreover, even if the factual disputes are comparatively simple and narrow, the court still needs to consider how much of the evidence will consist of the incarcerated person's testimony and how his or her presence might otherwise affect the factfinder's ability to make its credibility determination.

Second, the court should be concerned with the effects of the litigation on the nonincarcerated party and third parties. For example, in an action affecting the family, such as a divorce or custody hearing, a decision to hold the matter in abeyance until the incarcerated party is released might have negative effects on the family as a whole. *Cf. Whitney v. Buckner*, 734 P.2d 485, 488 (Wash. 1987) (noting the "fundamental importance of the marriage relationship" and the "state monopolization of the means for legally dissolving this relationship").

### 2. The Practical Concerns of Having an Incarcerated Person Appear at a Proceeding

The state has a strong interest in maintaining the confinement of incarcerated persons. *See Rilla*, 76 Wis. 2d at 434, 251 N.W.2d at 480. Transporting an incarcerated person to the courthouse and having that person attend a proceeding creates a risk to public safety. It also increases the risk of escape.[4]

---

[4] As an illustration of this risk, we take note of case law where prisoners, released from incarceration on a writ of habeas corpus *ad testificandum*, have escaped from the custody of prison officials. *See, e.g., United States v. Bailey*, 585 F.2d 1087, 1104 (D.C. Cir. 1978), *judgment rev'd*, 444 U.S. 394 (1980).

Of course, taking an incarcerated person out of confinement will always result in some increased risk to public safety and increase the chances of escape. What the trial court thus needs to measure is whether moving the particular incarcerated person will significantly increase these risks. In fact, transporting a specific individual might so increase these risks that the possible benefits of being present during a proceeding would not outweigh those risks. In such a scenario, the court would have to especially consider the alternative means through which that person can present his or her case to the court while remaining in confinement. We now examine these alternatives.[5]

### 3. The Alternative Methods of Providing the Incarcerated Party with Access to the Proceedings

Our first observation regarding this inquiry is that the applicable case law[6] is of such an age (the most recent case is fifteen years old) that it does not reflect the impact that technological advances have had on the trial process. Indeed, the Wisconsin Supreme Court did not expressly authorize the use of telephonic and audiovisual communication in judicial proceedings until 1987 and thus none of the cases reflect how an incarcerated person may now be able to effectively participate in a judicial proceeding without leaving the institution. *See In re the Amendment of Rules of Civil, Criminal and Appellate Procedure: Proceedings by Telephone and Audio-Visual Means*, 141 Wis. 2d xiii-

---

[5] An incarcerated person who presents a significant risk to public safety or a risk of flight is not likely to be soon scheduled for release. Hence, the trial court has further reasons to explore the alternative means by which that person can still participate so that the litigation continues to move forward.

[6] *See supra* note 3.

xxxiii (1987); *see also* John L. Kuehn, Comment, *Speaker-Telephone Testimony in Civil Jury Trials: The Next Best Thing to Being There?*, 1988 WIS. L. REV. 293, 297–99.

As Wisconsin has now officially recognized the utility of using technology in the trial process, we expect that trial courts will heavily rely on these advances to keep these cases progressing to resolution. *See, e.g., Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 700–03, 530 N.W.2d 34, 42–43 (Ct. App. 1995) (rejecting constitutional challenge to use of telephone link in TPR proceeding). For example, the incarcerated party may be able to conduct discovery by telephone. *See* § 804.05(8), STATS. The incarcerated party may also be afforded access to evidentiary hearings and arguments through a telephone link or possibly through an audiovisual link. *See* § 807.13, STATS.

However, technology is not the only alternative to consider. Even if these tools are not available, the incarcerated party's counsel (if he or she has counsel) can facilitate movement of the case. The trial court needs to determine if counsel can effectively develop the incarcerated party's case without his or her attendance.

## B.  Applying the Factors

Having described the inquiries that the trial court needs to make (and the record that the litigants need to compile), we will briefly describe the standards that the trial court should apply when it formulates a plan to manage the litigation.

The trial court must recognize that the Wisconsin Rules of Civil Procedure are forward-looking. The goal underlying these rules is to move litigation to resolution. *See* § 801.01(2), STATS. ("Chapters 801 to 847 shall

be construed to secure the just, speedy and inexpensive determination of every action and proceeding."); *see also Eden Stone Co. v. Oakfield Stone, Co.*, 166 Wis. 2d 105, 114, 479 N.W.2d 557, 561 (Ct. App. 1991) ("Continuances and delay are the bane of the judicial system."). In fact, we reject those portions of the authority we rely on above to the extent that they establish a presumption that litigation involving an incarcerated party should be continued until that party is released. *See Seybold v. Milwaukee County Sheriff*, 276 F. Supp. 484, 487 (E.D. Wis. 1967).

Thus, should either party believe that the proceedings must be adjourned, that party has the burden of establishing the grounds for such delay. Of course, both parties may agree that the litigation should proceed. In that case, the court's attention will be directed at forming a solution relating to *how* the case should proceed.

The other important factor that the court must consider is that the incarcerated person should remain in confinement. *See Rilla*, 76 Wis. 2d at 434, 251 N.W.2d at 480. Accordingly, the party seeking the presence of the incarcerated person must show why his or her presence is necessary, and equally, why the possible alternatives to having him or her appear in person are not appropriate. The trial court, following the lines of inquiry we explored above, must then formulate a plan to manage the case. Further, in those cases where both parties want the incarcerated party to appear, the court must protect the *state's* interest in having the incarcerated person remain in confinement. *See id.*

### C. The Costs of Transporting the Incarcerated Party to the Proceedings

As a result of the above-described advances in communication technology, we anticipate that a trial court

will rarely determine that the incarcerated party must be brought to the proceedings. Nonetheless, in this rare occasion, we recognize that the costs of transporting the incarcerated person to the proceeding will be an important issue to the court and the litigants because the incarcerated party will likely be indigent. In the present case, as an example, Darwin and Jacqueline each claim that they do not have the funds necessary to bring Darwin to the proceeding.[7] Thus, we will provide some guidance on the question of who pays the costs of transporting the incarcerated individual to the proceeding once the court concludes that his or her presence is necessary.

The rules relating to the costs associated with transporting incarcerated persons to proceedings are set out in § 782.45(1), STATS. This statute sets out a procedure through which the institution housing the person is responsible for the up-front costs of transportation. *See id.* That institution may then file a "statement of expenses" with the clerk of the court that ordered the inmate to appear. *See id.* The county must then reimburse the institution. See *id.*

Nonetheless, in most civil actions the county is not ultimately responsible for these expenses. It may seek the funds from the "party requesting the presence of the inmate." *See id.* If the party does not have the funds, moreover, we have held that a trial court has discretionary authority to assess these costs against the other party to the litigation. *See D.G. v. F.C.*, 152 Wis. 2d 159, 168–69, 448 N.W.2d 239, 243 (Ct. App. 1989).

But neither the statute nor the case law answers the specific question of who *ultimately* bears these

---

[7] The parties do not, however, analyze this issue in their briefs.

414

costs if the parties to the litigation are both indigent. Although we recognize the significance of this issue, it is not pertinent to the question directly before us—what factors must a court consider when deciding if it should order an incarcerated civil litigant to appear at a proceeding.[8] We therefore decline to address it now.

## The Present Appeal

Having set out the above guidelines, we now examine Jacqueline's contention that the trial court misused its discretion when it took "the scheduled trial date off the calendar" and ordered that "no trial will be scheduled until [Darwin] has been released from prison."

The court and the parties obviously did not have this opinion to guide their analysis. But because we face a challenge to a trial court's discretionary power, we would ordinarily look beyond the trial court's stated reasoning process and determine whether the record provides a basis for the trial court's choice. *See State v.*

---

[8] Some of the authority we analyzed above suggests that the costs of transporting the incarcerated individual to the proceeding is a factor that the court should consider when making the primary decision of whether to order the person to appear at the proceeding. We reject that aspect of the authority. *See, e.g., Stone,* 546 F.2d at 735–36. We also note that the above analysis is limited to situations in which an indigent prisoner in a Wisconsin correctional institution needs transportation to a proceeding in a Wisconsin state court. We have not found authority regarding the problem of who pays for transporting an indigent prisoner who is housed in another state's correctional institution to a proceeding in a Wisconsin state court. *See D.G. v. F.C.,* 152 Wis. 2d 159, 169, 448 N.W.2d 239, 243 (Ct. App. 1989).

*Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).

The record, however, is too scant. Although Jacqueline alleges that Darwin is intentionally stalling the proceedings and that delaying the proceedings would cause her emotional anguish, we do not know other important information. For instance, we do not know Darwin's scheduled release date. This is important because if the length of the remaining incarceration is short, then *temporarily* stalling the proceedings may have been a rational choice. Moreover, we do not know enough about Darwin's proposed evidentiary presentation to gauge whether an appearance by telephone (or other methods) would be an appropriate solution. It seems that the court and the parties never explored the alternatives to having Darwin appear in person.

Because the record is undeveloped, we must remand this matter for further proceedings. We direct the trial court to reconsider whether this case can move to trial and the related issue of whether Darwin's physical presence at trial is necessary.

*By the Court.*—Order reversed and cause remanded.