Robert PROSSER, Plaintiff-Appellant-Cross-
Respondent-Petitioner,

v.

Richard A. LEUCK and Cedarburg Mutual Insurance
Company, Defendants-Respondents-Cross-Appellants.

Supreme Court

*No. 97–0686. Oral argument October 13, 1998.—Decided April
21, 1999.*

(Also reported in 592 N.W.2d 178.)

126

129

130

For the plaintiff-appellant-cross respondent-petitioner there were briefs by *Jason W. Whitley* and *Novitzke, Gust & Sempf*, Amery and oral argument by *Jason W. Whitley.*

For the defendants-respondents-cross-appellants there was a brief by *Timothy M. Doyle* and *Thrasher, Doyle, Pelish & Franti, Ltd.*, Rice Lake and oral argument by *Timothy M. Doyle.*

¶ 1. WILLIAM A. BABLITCH, J. Petitioner, Robert Prosser (Prosser), requests that this court reverse the court of appeals' decision which determined that Prosser's settlement offer to respondent Cedarburg Mutual Insurance Company (Cedarburg) was ambiguous and therefore invalid. Accordingly, the court of appeals also determined that Prosser was not entitled to double costs and interest from Cedarburg. The ambiguity arose from the lack of clarity as to whether the offer of settlement was extended only to Cedarburg or to both Cedarburg and its insured, Richard A. Leuck (Leuck). We hold that an insurer, as part of its fiduciary duty to its insured, has a duty to clarify an offer of settlement that is ambiguous with respect to whether the offer applies to only the insurer or both the insurer and the insured. Failure to clarify the ambiguity results in a valid offer pursuant to Wis. Stat. § 807.01. We also hold, based on the plain language of § 807.01(3) and (4), that Prosser is entitled to double costs, including costs associated with determining coverage, and interest from the date of the settlement offer throughout the trial on determining coverage.

¶ 2. The history underlying this case is not in dispute. In 1992 defendant Leuck, a minor, started a fire which destroyed a warehouse owned by Prosser. On March 25, 1993, Prosser sued Leuck and his parents' insurance company, Cedarburg, for the damages to his warehouse and its contents.

¶ 3. On October 13, 1993, Prosser served Cedarburg with an offer of settlement for $99,750 "plus the actual costs of this action." The offer was addressed only to Cedarburg and its attorneys. Prosser offered to dismiss "this pending litigation and the entirety of defendant's liability attendant to said litigation. . .in exchange for the defendant's payment" of $99,750 "cash, plus the actual costs of this action." Cedarburg's insurance policy limit in this case was $100,000.

¶ 4. Cedarburg made no response to Prosser's settlement offer. Rather, because there was some evidence that Leuck intentionally started the fire, Cedarburg challenged coverage under its policy which provided an exclusion for intentional acts. On June 30, 1994, Cedarburg filed a motion to bifurcate the coverage issue from the liability and damages issues and to stay the underlying proceedings pending resolution of the coverage issue. The Barron County Circuit Court, Judge James C. Eaton presiding,[1] granted this motion on August 22, 1994.

¶ 5. After a trial and appeal, the court of appeals determined that the Cedarburg policy did provide coverage to Leuck for the claim. *Prosser v. Leuck*, 196 Wis. 2d 780, 788, 539 N.W.2d 466 (Ct. App. 1995). The court of appeals remanded the case to the circuit court for entry of judgment in favor of Prosser in such amount as

---

[1] Following the court of appeals' decision on the coverage issue, Prosser filed a motion for substitution of judge and the Honorable Edward R. Brunner was assigned to the case.

ultimately determined. Cedarburg filed a petition for review but this court denied review of the court of appeals' decision on November 14, 1995.

¶ 6. On November 30, 1995, Cedarburg tendered its policy limit of $100,000 to Prosser. Prosser did not accept this tender and on January 2, 1996, filed a motion for summary judgment and for double costs and interest pursuant to Wis. Stat. § 807.01(3) and (4)[2] for Cedarburg's failing to accept its settlement offer of October 13, 1993. At a hearing on December 19, 1996, the parties stipulated that judgment would be entered against Cedarburg in the amount of its policy limit, $100,000, and that the issue of double costs and interest pursuant to § 807.01(3) and (4) would be determined by the circuit court.

¶ 7. The circuit court granted Prosser's motion for interest pursuant to Wis. Stat. § 807.01(4) but

---

[2] All references to the Wisconsin Statutes are to the 1991–92 version unless otherwise noted.

Wisconsin Stat. § 807.01(3) and (4) provide:

(3) After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

(4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).

determined that the accrual of interest was tolled, along with the stay of the liability and damages issues, pending resolution of the coverage issue. Accordingly, the circuit court awarded Prosser interest from the date of the settlement offer, October 13, 1993, through the date the circuit court stayed the underlying action, and from the date this court denied review of the court of appeals' decision regarding coverage, November 14, 1995, through the date Cedarburg tendered its policy limits, November 30, 1995. The circuit court denied Prosser's motion for double costs pursuant to § 807.01(3), reasoning that most of Prosser's costs were associated with litigating the coverage issue.

¶ 8. Prosser appealed the circuit court's decision that interest did not accrue while the underlying action was stayed pending resolution of the coverage issue. Prosser also argued that the circuit court erred in denying him double costs pursuant to Wis. Stat. § 807.01(3). Cedarburg cross-appealed, arguing that Prosser's settlement offer was ambiguous and therefore invalid and that Prosser accordingly was not entitled to recover interest or double costs.

¶ 9. In an unpublished decision,[3] the court of appeals held that Prosser's settlement offer was ambiguous because it did not enable Cedarburg "to determine the amount required to settle the case and determine whether its duty to defend [Leuck] would survive the proferred settlement." Accordingly, the court of appeals determined that the offer was invalid and Prosser was not entitled to double costs or interest under Wis. Stat. § 807.01(3) and (4).

¶ 10. This court accepted Prosser's petition for review pursuant to Wis. Stat. § (Rule) 809.62(1). This

---

[3] *Prosser v. Leuck*, No. 97–0686, unpublished slip op. (Wis. Ct. App. Dec. 16, 1997).

135

case presents two issues for our determination. First, does an insurance company have a duty to clarify an ambiguous settlement offer? We hold that an insurer, as part of its fiduciary duty to its insured, has a duty to clarify an offer of settlement that is ambiguous with respect to whether the offer applies to only the insurer or both the insurer and the insured. Failure to clarify the ambiguity results in a valid offer pursuant to Wis. Stat. § 807.01. The second issue presented is whether, given the circumstances of this case, Prosser is entitled to double costs and interest pursuant to § 807.01(3) and (4) and if so, to what extent. We hold that Prosser is entitled to double costs, even for costs associated with determining coverage, and interest from the date of the settlement offer, throughout the trial on determining coverage.

## I.

■

¶ 11. We now turn to the first issue: whether an insurer has a duty to clarify an offer of settlement that is ambiguous with respect to whether the offer of settlement applies to only the insurer or both the insurer and the insured. Whether an offer is unambiguous and therefore valid for purposes of Wis. Stat. § 807.01 is a question of law that appellate courts review de novo. *Testa v. Farmers Ins. Exchange*, 164 Wis. 2d 296, 300, 474 N.W.2d 776 (Ct. App. 1991).

¶ 12. Cedarburg argues that the offer it received from Prosser was ambiguous and we agree. As the court of appeals aptly stated:

> . . . Cedarburg was unable to determine from the offer the amount necessary to settle the case. . . .The offer's ambiguity as to whether the entire litigation

would be dismissed also prevented an evaluation of Cedarburg's collateral exposure. Specifically, Cedarburg could not determine from the offer whether it would still owe a duty to defend its insured.

*Prosser v. Leuck*, No. 97–0686, unpublished slip op. at 5, (Wis. Ct. App. Dec. 16, 1997).

¶ 13. Generally, a plaintiff or offeror has the burden to make an offer of settlement clear and unambiguous. *DeMars v. LaPour*, 123 Wis. 2d 366, 375, 366 N.W.2d 891 (1985). "The defendant's only duty is to accept the offer in writing within ten days after its receipt, if so desired." *Id.* The offer must allow the defendant to fully and fairly evaluate his or her own exposure to liability. *Testa*, 164 Wis. 2d at 302. This general rule works well and is appropriate when the defendant or offeree is concerned with, and responsible for, only his or her own interests.

¶ 14. This general rule does not work well, however, when the offeree must be concerned with and is responsible for not only its own interests and exposure to liability, but also the interests and liability of another. Such is the case with Cedarburg.

> [I]n the standard liability insurance contract the insured surrenders completely the right to control the settlement or litigation of the victim's claim within the limits of the insurer's exposure. The threat to the insured is obvious: If the insurer fails to settle a third-party claim within the limits of the policy and chooses instead to litigate the matter, the insured will be exposed to that portion of any judgment which exceeds the policy limits.

137

*Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis. 2d 56, 60, 307 N.W.2d 256 (1981). By entering into an insurance contract and taking control of settlement or litigation the insurer assumes a fiduciary duty on behalf of the insured. "Because the insured has given up something of value to the insurer—namely, the right to defend and settle a claim—the insurer has been said to be in the position of a fiduciary with respect to an insured's interest in settlement of a claim." *Mowry v. Badger State Mut. Cas.*, 129 Wis. 2d 496, 511, 385 N.W.2d 171 (1986) (citing *Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 348, 237 N.W.2d 706 (1976)).

■

¶ 15. The fiduciary duty "carries with it the duty to act on behalf of the insured and to exercise the same standard of care that the insurance company would exercise were it exercising ordinary diligence in respect to its own business." *Alt*, 71 Wis. 2d at 348. *See also Hilker v. Western Automobile Ins. Co.*, 204 Wis. 1, 7, 231 N.W. 257, 235 N.W. 413 (1931) (the insured " 'ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business. . . .' " (citation omitted)).

■

¶ 16. The fiduciary duty imposes several obligations on the insurer. These include: 1) the insurer must diligently investigate to ascertain facts upon which to base a good-faith decision whether to settle; 2) the insurer must inform the insured of any likelihood of liability in excess of policy limits so that the insured might properly protect him or herself; 3) the insurer must timely inform the insured of any settlement offers received and of the progress of settlement negotiations.

*Mowry*, 129 Wis. 2d at 510. The insurer must fulfill these obligations as part of its fiduciary duty even if it challenges coverage. *Id.* at 524.

¶ 17. When an insurer receives an offer of settlement that is ambiguous with respect to whether the offer applies to only the insurer or both the insurer and the insured, it cannot fulfill these obligations without clarifying the offer.

¶ 18. The present case provides an illustration. Cedarburg argues to this court that it could not ascertain whether Prosser's offer, addressed only to Cedarburg, proposed releasing only Cedarburg or also its insured, Leuck. However, under either interpretation, the potential impact on its fiduciary Leuck was significant. If the offer released only Cedarburg, Leuck would remain in the case but bereft of the coverage provided by Cedarburg. If the offer applied to both, acceptance of the offer would release Leuck from any further exposure. Under either scenario, the impact on Leuck is apparent. Accordingly, consistent with its fiduciary duty, Cedarburg had a duty to clarify the ambiguity of whether the offer applied only to Cedarburg or to Cedarburg and its insured. Because Cedarburg did not clarify the ambiguity, the offer is a valid offer pursuant to Wis. Stat. § 807.01.

¶ 19. This holding comports with our recent holding in *Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 548 N.W.2d 64 (1996) in which this court determined that an insurance company has a duty to clarify whether an insured wants the insurer to provide a defense. *Towne Realty*, 201 Wis. 2d at 269.

> [W]e hold that if it is unclear or ambiguous whether the insured wishes the insurer to defend the suit, it

becomes the responsibility of the insurer to communicate with the insured before the insurer unilaterally foregoes the defense. . . .[T]his holding should not create an onerous duty for insurers: a simple letter requesting clarification of the insured's position should suffice. (Footnotes omitted.)

*Id.* Similarly, a simple letter or telephone call requesting clarification of the offeror's position should suffice.

■

¶ 20. Our holding also promotes the purpose of Wis. Stat. § 807.01 which is to encourage settlement and accordingly, secure just, speedy and inexpensive determinations of disputes. *See In re Marriage of Schmidt v. Schmidt,* 212 Wis. 2d 405, 412–13, 569 N.W.2d 74 (Ct. App. 1997); *White v. General Cas. Co. of Wisconsin,* 118 Wis. 2d 433, 438, 348 N.W.2d 614 (Ct. App. 1984). As noted by the court of appeals in this case, there is no reason that an insurer, bound by its fiduciary duty, cannot make reasonable inquiries regarding ambiguities so that easily correctable errors do not compromise the utility of a settlement offer.

¶ 21. Cedarburg argues that if the court imposes a duty on the insurer to clarify an ambiguous settlement offer, such rule is new and should be applied prospectively only. We disagree.

■

¶ 22. "Generally, this court adheres to the 'Blackstonian Doctrine,' which provides that a decision overruling or repudiating an earlier decision operates retrospectively." *Colby v. Columbia County,* 202 Wis. 2d 342, 363, 550 N.W.2d 124 (1996). The court has recognized exceptions to the Blackstonian Doctrine when it would be inequitable in the particular case to apply the new rule retrospectively. *Id.* at 363–64. Rec-

ognizing an exception to retrospective application is a question of policy for the court. *Id.*

¶ 23. We recognize that prior case law, even that involving defendant insurers, determined that the offeror has a duty to draft a clear and unambiguous settlement offer. *See, e.g., DeMars*, 123 Wis. 2d at 375. However, insurers have had a fiduciary duty to their insureds at least since 1931 with this court's decision in *Hilker*, 204 Wis. 1. Prior case law imposing the burden on the offeror to make a clear and unambiguous offer even when the offeree was an insurer did not consider the relationship between Wis. Stat. § 807.01 and the well-established fiduciary duty that an insurer owes to its insured. Requiring insurers to clarify ambiguity in settlement offers is simply part of their long and well-established fiduciary duty to their insureds. Accordingly, we are not convinced that a balancing of equities requires an exception to the Blackstonian Doctrine of retrospective application.

¶ 24. In sum, we conclude that as part of its fiduciary duty to its insured, an insurer has a duty to clarify any ambiguity in a settlement offer it receives with respect to whether the offer applies to only the insurer or both the insurer and the insured. Failure to clarify the ambiguity results in a valid offer pursuant to Wis. Stat. § 807.01. Accordingly, because Cedarburg did not clarify Prosser's settlement offer, the offer was valid.

II.

¶ 25. Having determined that Prosser's settlement offer was valid, we now turn to the second issue presented: given the circumstances of this case, is Prosser entitled to double costs and interest under Wis.

141

Stat. § 807.01(3) and (4), and if so, to what extent? To resolve this issue, we must first determine whether the judgment in this case was more favorable than Prosser's offer of settlement. If it was, Prosser is entitled to double costs and interest. However, if Prosser is entitled to double costs and interest we must also consider whether costs associated with determining a coverage issue are subject to doubling under § 807.01(3) and whether a stay of an underlying case pending determination of coverage also stays accrual of interest under § 807.01(4).

## A.

¶ 26. Whether Prosser is entitled to double costs and interest requires application of Wis. Stat. § 807.01(3) and (4). Applying a statute to a set of facts is a question that this court reviews de novo. *St. ex rel. Badke v. Greendale Village Bd.*, 173 Wis. 2d 553, 569, 494 N.W.2d 408 (1993).

¶ 27. Wisconsin Stat. § 807.01(3) provides that a plaintiff shall recover double the amount of taxable costs if the plaintiff recovers a judgment that is more favorable than the amount of the rejected settlement offer. Therefore, to determine whether Prosser is entitled to receive double costs under § 807.01(3), we must determine whether he recovered a judgment that is "more favorable" than the settlement offer he made. Wisconsin Stat. § 807.01(4) provides that a party is entitled to interest under that section if the party recovers a judgment which is greater than or equal to the amount specified in the rejected settlement offer. To determine whether Prosser is entitled to interest under § 807.01(4), we must determine whether he

recovered a judgment that is "greater than or equal to" the settlement offer he made.

¶ 28. On October 13, 1993, Prosser sent Cedarburg a settlement offer for $99,750 "plus the actual costs of this action."[4] On December 19, 1996, the parties stipulated that Prosser's damages exceeded Cedarburg's policy limits of $100,000 and that judgment would be entered against Cedarburg in the amount of $100,000. Although the record shows that Prosser's "actual costs of this action" exceeded $250, we nevertheless conclude that the judgment was more favorable, and greater than Prosser's settlement offer.

¶ 29. Wisconsin Stat. § 807.01(3) provides that a plaintiff may make an offer of settlement "for the

---

[4] We recognize that after the circuit court granted Cedarburg's motion to bifurcate the coverage issue and stay the underlying case, Prosser made a second offer of settlement on September 21, 1994, for $80,000. Cedarburg then filed an offer of judgment pursuant to Wis. Stat. § 807.01(1) on September 27, 1994, for $20,000. After the coverage issue was resolved and Prosser did not accept Cedarburg's tender of its policy limits, Cedarburg filed a second offer of judgment pursuant to § 807.01 on October 14, 1996, for "such amount which when added to taxable costs and disbursements will total an offer of judgment in the sum of $106,000." Despite this exchange of offers, in arguing to this court both parties assume that Prosser's offer of settlement made on October 13, 1993, is the offer applicable to determining double costs and interest pursuant to Wis. Stat. § 807.01(3) and (4). Neither party considered the effect of these subsequent offers on the initial offer. Although this court may sua sponte consider issues not raised by the parties, *State v. Holmes*, 106 Wis. 2d 31, 39–40, 315 N.W.2d 703 (1982), we decline to do so here. Therefore, we consider Prosser's settlement offer of October 13, 1993, is the applicable settlement offer in this case.

143

sum. . .with costs." "The statute contemplates that offer of a specified sum should also state that the amount is 'with costs,' that is, in addition to costs." *Stahl v. Sentry Insurance*, 180 Wis. 2d 299, 307, 509 N.W.2d 320 (Ct. App. 1993). "[U]nder § 807.01(3), Stats., the offer and the judgment must be compared exclusive of any costs." *Northridge Co. v. W.R. Grace & Co.*, 205 Wis. 2d 267, 290, 556 N.W.2d 345 (Ct. App. 1996)).

¶ 30. Accordingly, to determine if Prosser should receive double costs, we must compare the judgment, exclusive of costs, with the settlement offer, exclusive of costs. In Prosser's case the parties stipulated that the judgment, exclusive of costs, was $100,000. Although the settlement offer was for $99,750 "plus the actual costs of this action," the settlement offer, exclusive of costs, was for $99,750. Because the judgment of $100,000 is more favorable than the settlement offer for $99,750, Prosser should recover double the amount of taxable costs under Wis. Stat. § 807.01(3).

¶ 31. Regarding interest under Wis. Stat. § 807.01(4), we recognize that both *Stahl* and *Northridge* only addressed double costs under Wis. Stat. § 807.01(3). However, § 807.01(4) regarding interest, applies to offers of settlement made "under this section." In other words, § 807.01(4) applies to an offer of settlement made pursuant to § 807.01(3) "for the sum. . .with costs." Therefore, we conclude that in determining whether a judgment is greater than or equal to a rejected settlement offer for purposes of determining whether a party is entitled to interest, we apply the same principles as we did in determining double costs. We compare the judgment of $100,000, exclusive of costs, with the rejected settlement offer of $99,750, exclusive of costs. Because the judgment is

144

greater than the settlement offer, we conclude that Prosser is entitled to interest under § 807.01(4).

## B.

¶ 32. Having determined that Prosser is entitled to double costs under Wis. Stat. § 807.01(3) we must consider whether costs associated with determining a question of insurance coverage are subject to doubling under this statute. This question requires that we interpret § 807.01(3). Questions of statutory interpretation are questions of law which we review de novo. *Stockbridge School Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996) (citation omitted). Our purpose is to discern the intent of the legislature. *Id.* If the legislative intent is clear from the plain language of the statute, we need not go further. *Id.* at 220 (citing *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996). If the plain language of the statute is ambiguous, we turn to legislative history, scope, object, subject matter, and context of the statute to determine legislative intent. *Jungbluth*, 201 Wis. 2d at 327.

¶ 33. The plain language of Wis. Stat. § 807.01(3) provides that "[i]f the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs." The plain language is unambiguous. Two conditions must be met to recover double the amount of taxable costs: 1) the offer of settlement must not be accepted; and 2) the plaintiff must recover a judgment that is more favorable than the settlement offer. If these two conditions are met, the statute specifies that the plaintiff "shall" recover double the amount of taxable costs. Section 807.01(3) provides no excep-

tions for assessment of double costs. We also find no exceptions in either case law or other statutes, and Cedarburg has pointed to no exceptions that would preclude the plaintiff from recovering double the amount of taxable costs under § 807.01(3) for costs associated with determining the coverage issue.

¶ 34. "Taxable costs" are those allowed as items of cost under Wis. Stat. § 814.04 (reprinted in part below).[5] These allowable costs include attorney fees and various disbursements. There is nothing in § 814.04 to indicate that costs associated with a coverage dispute, determined while the underlying case is stayed, are not included in items of cost. Wisconsin Stat. § 814.10, regarding taxation of costs, also makes

---

[5] Wisconsin Stat. § 814.04 provides in pertinent part:

**Items of costs.** Except as provided in ss. 93.20, 101.22(6)(i) and (6m)(a), 814.025, 814.245, 895.035(4), 895.75(3), 943.212(2)(b), 943.245(2)(d) and 943.51(2)(b), when allowed costs shall be as follows:

(1) ATTORNEY FEES. (a) When the amount recovered or the value of the property involved is $1,000 or over, attorney fees shall be $100; when it is less than $1,000 and is $500 or over, $50; when it is less than $500 and is $200 or over, $25; and when it is less than $200, $15.

. . .

(2) DISBURSEMENTS. All the necessary disbursements and fees allowed by law; the compensation of referees; a reasonable disbursement for the service of process or other papers in an action when the same are served by a person authorized by law other than an officer, but the item may not exceed the authorized sheriff's fee for the same service; amounts actually paid out for certified copies of papers and records in any public office; postage, telegraphing, telephoning and express; depositions including copies; plats and photographs, not exceeding $50 for each item; an expert witness fee not exceeding $100 for each expert who testifies, exclusive of the standard witness fee and mileage which shall also be taxed for each expert; and in actions relating to or affecting the title to lands, the cost of procuring an abstract of title to the lands. Guardian ad litem fees shall not be taxed as a cost or disbursement.

no exceptions, even for costs associated with determining coverage.

¶ 35. Our conclusion is supported by the legislature's use of the term "shall" in Wis. Stat. § 807.01(3) ("the plaintiff shall recover double the amount of taxable costs"). When a statute uses the term "shall" we presume that its intent is mandatory. *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 477, 572 N.W.2d 466 (1998) (citing *Karow v. Milwaukee Co. Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978)). Accordingly, we presume that the use of "shall" in Wis. Stat. § 807.01(3) is mandatory—the plaintiff "shall" recover double the amount of taxable costs if the statutory conditions are met. Our presumption is strengthened because "shall" and "may" are both used in the same statutory section. When "shall" and "may" are used in the same section, we " 'can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings.' " *GMAC Mortgage Corp.*, 215 Wis. 2d at 478 (quoting *Karow*, 82 Wis. 2d at 571).

¶ 36. Finally our conclusion that costs associated with determining coverage are subject to doubling under Wis. Stat. § 807.01(3) is supported by the purpose of § 807.01—to encourage pretrial settlement. *See DeMars*, 123 Wis. 2d at 373. The risk of being assessed the penalty of double costs under § 807.01(3) encourages parties to seriously assess their chances of winning a coverage or liability dispute. The party who rejects a settlement offer and forges ahead with litigation does so with the full knowledge of § 807.01(3) and that if not successful, they may be subject to double costs under § 807.01(3).

147

¶ 37. Cedarburg relies on *Oliver v. Heritage Mut. Ins. Co.*, 179 Wis. 2d 1, 20 n.4, 505 N.W.2d 452 (Ct. App. 1993) to assert that Prosser is not entitled to double costs or interest from an insurer who declines a settlement offer and then, after learning new facts, tenders its policy limits as long as the insurer is not negligent in investigating the facts and the new facts are material to the case and changed the insurer's mind. Cedarburg asserts that it was not negligent in investigating the facts because it did as the law allows—challenge coverage by moving for bifurcation of the coverage issue. *See* Wis. Stat. § 803.04(2)(b); *Newhouse v. Citizens Security Mut. Ins.*, 176 Wis. 2d 824, 836, 501 N.W.2d 1 (1993). *See also Elliott v. Donahue*, 169 Wis. 2d 310, 317, 485 N.W.2d 403 (1992) ("An insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established.")

¶ 38. We recognize that bifurcation, to allow determination of the coverage issue before litigating the liability and damages issues, is the accepted practice when coverage is disputed.

> The rule has thus developed that an insurer who has a duty to defend. . .and who claims that the terms of the policy deny coverage for the incident forming the basis of the suit, must take steps to seek and obtain a bifurcated trial—litigating coverage first and obtaining a stay of all proceedings in the liability and damage aspects of the case until coverage, or lack of coverage, is determined.

*Kenefick v. Hitchcock*, 187 Wis. 2d 218, 232–33, 522 N.W.2d 261 (Ct. App. 1994) (citing *Elliott*, 169 Wis. 2d at 318). Although bifurcation is the accepted practice when coverage is disputed, we are not persuaded that

costs associated with determining coverage are not subject to doubling under Wis. Stat. § 807.01(3).

¶ 39. Bifurcation of the coverage issue from the liability and damages issues is specifically allowed by Wis. Stat. § 803.04(2)(b) (reprinted below).[6] However, neither Wis. Stat. § 807.01(3) nor § 803.04(2)(b) carve out an exception to the award of double costs under § 807.01(3) for costs associated with determining coverage under § 803.04(2)(b).

■

¶ 40. In addition, the predecessor to Wis. Stat. § 803.04(2)(b), already existed when the legislature enacted the predecessor to Wis. Stat. § 807.01(3), allowing bifurcation of trials on liability and coverage issues. In construing statutes, we presume that the legislature knew existing law when it enacted a statute. *In Interest of R.E.H.*, 101 Wis. 2d 647, 652, 305 N.W.2d 162 (Ct. App. 1981) (citing *Mack v. Joint Sch. Dist. No. 3, Village of Hales Corners*, 92 Wis. 2d 476, 285 N.W.2d 604 (1979)).

---

[6] Wisconsin Stat. § 803.04(2)(b) provides as follows:

 If an insurer is made a party defendant pursuant to this section and it appears at any time before or during the trial that there is or may be a cross issue between the insurer and the insured or any issue between any other person and the insurer involving the question of the insurer's liability if judgment should be rendered against the insured, the court may, upon motion of any defendant in the action, cause the person who may be liable upon such cross issue to be made a party defendant to the action and all the issues involved in the controversy determined in the trial of the action or any 3rd party may be impleaded as provided in s. 803.05. Nothing herein contained shall be construed as prohibiting the trial court from directing and conducting separate trials on the issue of liability to the plaintiff or other party seeking affirmative relief and on the issue of whether the insurance policy in question affords coverage. Any party may move for such separate trials and if the court orders separate trials it shall specify in its order the sequence in which such trials shall be conducted.

¶ 41. Wisconsin Stat. § 803.04(2)(b), taken from Wis. Stat. § 260.11, *Wisconsin Rules of Civil Procedure*, 67 Wis. 2d 585, 647 (1976), was amended in 1931 to allow a circuit court to direct a separate trial on the issue of coverage. L. 1931, c. 375, s.2. It was not until 40 years later, in 1971, that the legislature first allowed a plaintiff who recovers a judgment that is more favorable than the settlement offer to recover double the amount of taxable costs. L. 1971, c.27, s.3 (regarding Wis. Stat. § 269.02, the predecessor to Wis. Stat. § 807.01(3)). Because we presume that the legislature is aware of existing law when it passes a new statute, *In Interest of R.E.H.*, 101 Wis. 2d at 652, we presume that the legislature was aware of the circuit court's ability to order a separate trial on the issue of coverage when it enacted a statute allowing double costs in the event a plaintiff recovers a judgment more favorable than the settlement offer. However, the legislature failed to take the opportunity to make any exceptions for the award of double costs under § 807.01(3).

¶ 42. Cedarburg also argues that after coverage was determined, it re-evaluated its exposure and properly tendered its policy limit. Prosser rejected the tendered policy limit and went forward with steps to litigate the liability and damages issues. Therefore, Cedarburg argues, according to *Oliver*, it would be unjust to penalize Cedarburg with double costs and interest under Wis. Stat. § 807.01(3) and (4).

¶ 43. *Oliver* does not resolve this issue. In *Oliver*, the plaintiff filed an offer to settle for the insurance policy limits of $25,000 on February 7, 1990. The insurer did not accept Oliver's offer within 10 days as prescribed by Wis. Stat. § 807.01(3). *Oliver*, 179 Wis. 2d at 16. Nearly six months after Oliver tendered his offer to settle, and following discovery, the insurer tendered

150

its policy limits of $25,000 on August 8, 1990. *Id.* at 18. Oliver refused to accept the insurer's offer. *Id.* The court held that Oliver was not entitled to double costs and interest following the insurer's tender of its policy limits.

¶ 44. In *Oliver*, the court did not decide whether Oliver was entitled to double costs and interest prior to the insurer's tender of its policy limits. Here, the circuit court held that Prosser was entitled to double costs and interest (except for the period of time required for resolution of the coverage question) prior to Cedarburg's tender of its policy limits.[7] This issue was not resolved in *Oliver*. Accordingly, *Oliver* is not determinative.

¶ 45. We conclude that the plain language of Wis. Stat. § 807.01(3) makes no exception for assessment of double costs. If the plaintiff's settlement offer is not accepted and the judgment is more favorable than the settlement offer, the plaintiff "shall" recover double the amount of taxable costs. Because the statute provides no exceptions we hold that if the statutory conditions are met the taxable costs subject to doubling include costs associated with determining coverage.

---

[7] We recognize that Wis. Stat. § 807.01(4) provides that interest is calculated on the amount recovered from the date of the settlement offer "until the amount is paid." However, Prosser appealed from the circuit court order which granted him interest and double costs through November 30, 1995, when Cedarburg tendered its policy limits, arguing only that he is entitled to interest and double costs while the underlying case was stayed pending determination of the coverage issue. Prosser did not argue, nor do we decide, whether he is entitled to interest "until the amount is paid."

## C.

¶ 46. We have determined that Prosser is entitled to recover interest pursuant to Wis. Stat. § 807.01(4) because he recovered a judgment that is greater than or equal to the amount he offered. However, this case requires that we also consider whether a stay of underlying issues pending determination of coverage also stays accrual of interest under § 807.01(4). Cedarburg does not contest that Prosser is due some interest. Cedarburg only argues that Prosser is not entitled to accrue interest when the underlying case was stayed pending determination of the coverage issue. This issue requires that we interpret § 807.01(4). We review questions of statutory interpretation de novo. *Stockbridge*, 202 Wis. 2d at 219.

¶ 47. Wisconsin Stat. § 807.01(4) specifies that if the party making the settlement offer recovers a judgment which is greater than or equal to the settlement amount, that party is entitled to interest on the amount recovered from the date of the offer to when it is paid. The plain language of this statute does not carve out an exception for any time period during which the calculation of interest could be stayed. In fact, the plain language provides that interest accrues throughout the litigation: "from the date of the offer of settlement until the amount is paid." § 807.01(4). Even Wis. Stat. § 803.04(2)(b), which allows circuit courts to bifurcate coverage and liability questions, does not stay the accrual of interest under § 807.01(4) pending determination of coverage.

■

¶ 48. Our determination is consistent with the obligations imposed by the insurer's fiduciary duty. Even while the underlying case is stayed pending determination of coverage, the insurer still has the

obligations attendant to its fiduciary duty to inform the insured of settlement offers and negotiations. *See, e.g., Mowry,* 129 Wis. 2d at 525–26.

> Once an insurer has rejected an offer, the insured should then have the opportunity to settle for the proffered amount. . . .If the coverage trial results in a finding of coverage, then the insurer would assume responsibility for its insured's indemnification. If coverage does not exist, then the insured will at least have limited its liability in what was concededly an excess liability case, rather than exposing itself to extensive liability.

*Id.* at 526. In other words, even when the underlying case is pending determination of coverage, the insurer's fiduciary duty regarding settlement is not stayed. Settlement negotiations can continue.

¶ 49. Because settlement negotiations can continue while the underlying case is stayed, accrual of interest on a settlement offer should also continue. The purpose of Wis. Stat. § 807.01 is to encourage settlement. *DeMars,* 123 Wis. 2d at 373. The risk of being assessed interest under § 807.01(4) is meant to "encourage settlement of cases prior to trial by providing an incentive to accept reasonable settlement offers." *Erickson v. Gundersen,* 183 Wis. 2d 106, 124, 515 N.W.2d 293 (Ct. App. 1994 (citations omitted). If interest does not accrue when an underlying action is stayed pending determination of coverage there would be no "incentive," or at least a greatly reduced incentive, to accept a reasonable settlement offer.

¶ 50. Cedarburg relies on *State ex rel. Rabe v. Ferris,* 97 Wis. 2d 63, 293 N.W.2d 151 (1980) for its assertion that the stay of the underlying case pending

153

determination of the coverage issue also stayed accrual of interest under Wis. Stat. § 807.01(4). Specifically, Cedarburg asserts that *Rabe* held that a stay of underlying proceedings stops the running of all other statutory time periods. Cedarburg argues that a stay, therefore, temporarily stops *all* activity relating to the underlying action, even accrual of interest under § 807.01(4).

¶ 51. The facts and holding of *Rabe* are distinguishable from the present case. In *Rabe*, a case before this court on a writ of habeas corpus, Rabe alleged that his statutory right to a speedy trial was violated because of a delay in proceedings against him caused by the state's interlocutory appeal. *Rabe*, 97 Wis. 2d at 66. This court held that "[a] stay of proceedings directed to a lower court tolls the running of any time period within which a particular act is to be done in that court. (Footnote omitted)." *Id.* at 68.

¶ 52. Accrual of interest under Wis. Stat. § 807.01(4), however, is not a particular act that is to be done within any time period. It is a result triggered by the defendant's failure to do a particular act—accept the plaintiff's settlement offer within 10 days after receipt of the offer. *See* § 807.01(4). Accordingly, the stay of the underlying case could not have affected the accrual of interest under § 807.01(4). Therefore, *Rabe* does not apply to this case.

¶ 53. In sum, we hold that the accrual of interest under Wis. Stat. § 807.01(4) is not stayed when the underlying action is stayed pending determination of coverage. The plain language of the statute, § 807.01(4), provides that interest is calculated on the amount recovered "from the date of the offer of settlement until the amount is paid." The statute carves out

no exceptions for staying the accrual of interest. Therefore, we determine that interest accrued "from the date of the offer of settlement," that is, from October 13, 1993.

¶ 54. We remand the cause to the circuit court for determination of double costs and interest consistent with this opinion, and to enter judgment accordingly.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

¶ 55. ANN WALSH BRADLEY, J. (*concurring*). Although I join the other parts of the majority opinion, I conclude, as did the circuit court, that Cedarburg Mutual Insurance Company is not subject to double costs and interest under Wis. Stat. § 807.01(3), (4) for litigating whether Richard Leuck had coverage under his insurance policy. Because the majority opinion concludes otherwise and in the process unreasonably forces an insurer in Cedarburg's position to settle before it can fully and fairly assess its liability for damages, I respectfully concur.

¶ 56. There can be little doubt that Wis. Stat. § 807.01 exists to encourage parties to settle their cases rather than take them to trial. *Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 501 N.W.2d 788 (1993); *DeMars v. LaPour*, 123 Wis. 2d 366, 373, 366 N.W.2d 891 (1985). To the extent that § 807.01 forces parties to carefully analyze their realistic chances of liability or recovery and reevaluate the merits of taking their case to trial, the statute serves an important purpose. Settlement is to be encouraged rather than discouraged in the law.

155

¶ 57. Yet, the virtues of settlement are not unbounded. While Wis. Stat. § 807.01 exists to encourage settlement, it cannot be employed to unreasonably force settlement. *Nelson v. McLaughlin*, 211 Wis. 2d 487, 517–18, 565 N.W.2d 123 (1997) (Abrahamson, C.J., dissenting); *White v. General Casualty Co. of Wisconsin*, 118 Wis. 2d 433, 439–40, 348 N.W.2d 614 (Ct. App. 1984). As courts in this state have repeatedly said, a settlement offer unreasonably forces settlement when the recipient of the offer is not able to fully and fairly evaluate its liability. *Nelson*, 211 Wis. 2d at 504, 517–18; *Blank v. USAA Property & Casualty Ins. Co.*, 200 Wis. 2d 270, 276, 546 N.W.2d 512 (Ct. App. 1996); *Testa v. Farmers Ins. Exchange*, 164 Wis. 2d 296, 302, 474 N.W.2d 776 (Ct. App. 1991).

¶ 58. The majority opinion unreasonably forces an insurer in Cedarburg's position to settle because that insurer cannot fairly and fully assess its liability. This is not a case in which an insurer is presented with an offer to settle but incorrectly guesses that it can get a lower dollar amount by taking the case to trial. *See, e.g., Northridge Co. v. W.R. Grace & Co.*, 205 Wis. 2d 267, 288–89, 556 N.W.2d 345 (Ct. App. 1996); *Testa*, 164 Wis. 2d at 299–300. Rather, this is a case where the insurer had legitimate doubts about whether it even had a duty to provide coverage to its insured in the first instance. I do not see how Cedarburg could fully and fairly assess the amount of its liability for any wrongful actions attributed to its insured until it first knew if it would be obligated to indemnify its insured. Under the majority's analysis, what sort of choice does Cedarburg have? Only a Hobson's choice: either buy its way out of a suit to which it arguably had no financial obligations, or press for an answer to that question and risk double costs and interest.

¶ 59. The court of appeals in *Oliver v. Heritage Mut. Ins. Co.*, 179 Wis. 2d 1, 18–20, 505 N.W.2d 452 (Ct. App. 1993), recognized that Wis. Stat. § 807.01 can be utilized in unreasonably coercive ways. While the facts of that case are not on all fours with the facts in this case, the underlying principle that formed the *Oliver* decision is what should form this one as well.

¶ 60. In *Oliver* an injured party offered to settle with an insurance company early in the litigation before the facts of the case were conclusively known. *Id.* at 18. At the time of the settlement offer, the insurance company could not know the extent of Oliver's contribution to his injuries because the facts of the case were not yet completely developed. *Id.* Later, when the insurance company learned that Oliver's part in his injury was relatively minor, it reassessed its risk and tendered the policy limit which Oliver then refused. *Id.* at 18–19. The court of appeals concluded that the penalties of Wis. Stat. § 807.01 were not applicable in that situation because the insurance company did what it should have done: upon discovering additional facts which altered its risk, it attempted to settle the case. *Id.* at 20.

¶ 61. The facts of this case are more compelling than *Oliver*.[1] In *Oliver* the insurer knew that it would be financially responsible for any wrongful acts of its

---

[1] I do not understand the majority's attempt at distinguishing this case from *Oliver*. Majority op. at 151. Contrary to the majority's assertion, the circuit court in *Oliver* must have determined that Oliver was entitled to double costs and interest prior to the insurer's tender of its policy limits because the court of appeals reversed that award. It would seem axiomatic that before Wis. Stat. § 807.01's penalties can be assessed, a court must determine that the party requesting such measures is entitled to them.

insured up to the policy limits but at the time could not assess the extent of its insured's misconduct. Here Cedarburg did not even know whether it would be financially responsible for its insured's actions. If the *Oliver* insurer was relieved from the penalties of Wis. Stat. § 807.01, I cannot see why Cedarburg should fare any worse.

¶ 62. In sum, the majority opinion's imposition of double costs and interest on Cedarburg for determining whether it had a duty to indemnify its insured does not encourage settlement. It unreasonably forces settlement. As a result, consistent with the circuit court, I would not award double costs and interest to Prosser for the time and expense associated with litigating Cedarburg's duty to provide coverage for the actions of its insured. Accordingly, I respectfully concur.

¶ 63. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE DONALD W. STEINMETZ join this opinion.