Robert JOHNSON,
Plaintiff-Respondent-Cross-Appellant,

v.

CINTAS CORPORATION No. 2,
Defendant-Appellant-Cross-Respondent,†

UNITED HEALTHCARE, Defendant.

Court of Appeals

*No. 2013AP2323. Submitted on briefs October 27, 2014.
—Decided January 14, 2015.*

2015 WI App 14

(Also reported in 860 N.W.2d 515.)

† Petition for Review Filed.

On behalf of the defendant-appellant-cross-respondent, the cause was submitted on the briefs of *Terry E. Johnson* and *J. Ryan Maloney* of *Peterson, Johnson & Murray, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent-cross-appellant, the cause was submitted on the brief of *Kent A. Tess-Mattner* of *Schmidt, Rupke, Tess-Mattner & Fox, S.C.* of Brookfield, and *John V. O'Connor* of Kenosha.

A nonparty brief was by *Mark L. Thomsen* and *Brett A. Eckstein* of *Cannon & Dunphy, S.C.*, of Brookfield, for Wisconsin Association for Justice.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. BROWN, C.J. In this negligence case, Robert Johnson was a passenger in his own vehicle when his friend, Marvin Crandall, caused an accident that in-

jured them both. Both Johnson and Crandall were drunk at the time of the accident. Johnson's automobile insurance was provided by his employer, Cintas Corporation No. 2, and a permissive driver like Crandall qualified as an insured under the policy. So Johnson sued Cintas 2 to recover insurance benefits for the injuries he received due to Crandall's negligent driving.

¶ 2. In 2008 Johnson filed a $300,000 offer of settlement, but the parties never settled. At the 2013 trial, the jury awarded Johnson over $400,000 in damages and found that he was twenty percent contributorily negligent. Because the award exceeded the amount of Johnson's 2008 offer of settlement, Johnson sought interest on the judgment from the time the offer of settlement was made at twelve percent, per Wis. Stat. § 807.01(4) (2007–08).[1] The court, however, applied the lower rate of interest applicable under an amended version of the statute that came into force in December 2011. *See* § 807.01(4) (2011–12); 2011 Wis. Act 69.

¶ 3. Cintas 2 appeals from the judgment, arguing that the jury was not "fully and fairly" instructed about negligence law and that an indirect reference to Crandall's criminal record marred the trial. Johnson cross-appeals on the issue of whether the reduced interest rate under the 2011 amendment applies when an offer of settlement was filed before the law changed.

¶ 4. We agree with Johnson that retroactive reduction of the interest rate applicable to a judgment under Wis. Stat. § 807.01(4) is unconstitutional. The court should have applied the twelve percent rate that was in force at the time the offer of settlement was

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

made in 2008. So we reverse the judgment on that issue and write this opinion explaining our reasoning. We affirm the rest of the judgment because there were no other reversible errors.

## Facts

¶ 5. In 2007, Johnson sued to recover money for personal injuries and related damages caused by a car accident that happened in July 2006. Johnson's summons and complaint incorrectly named Cintas 2's parent corporation, "Cintas Corporation," rather than Cintas 2, as a defendant, although Johnson served the pleadings on Cintas 2. *See Johnson v. Cintas Corp. No. 2*, 2012 WI 31, ¶¶ 1, 5, 8, 339 Wis. 2d 493, 811 N.W.2d 756. In May 2008, Johnson filed his offer of settlement for $300,000 plus costs, but no settlement was reached, and the parties continued to litigate the defective service. *Id.*, ¶¶ 17–21.

¶ 6. An initial default judgment granted against Cintas 2 was voided on appeal due to defective service (i.e., naming the wrong corporate entity in the complaint), and the cause was remanded for further proceedings. *Id.*, ¶¶ 1, 4. Upon remand, in May 2012 the court vacated a judgment for damages that had been issued after the default judgment, and the case proceeded to trial in April 2013.

¶ 7. Cintas 2 requested jury instructions and a special verdict form that would have told the jury to evaluate Johnson's contributory negligence in two different forms: negligence in permitting Crandall to drive his vehicle and negligence in voluntarily riding in the vehicle while Crandall drove. Cintas 2 argued that the jury must consider these two types of negligence separately so as to account for both Johnson's "active negligence" in giving Crandall the vehicle and

his "passive negligence" in riding in the vehicle when he knew Crandall was intoxicated. The court denied Cintas 2's request on grounds that there was no law applying the negligent entrustment theory (i.e., Johnson's alleged "active negligence") to a plaintiff as a form of contributory negligence. Instead, the court concluded, a verdict form that told the jury to consider "just simply negligence" on Johnson's part, whether it was in the form of giving the keys or getting in the car, would suffice.

¶ 8. At trial, Crandall testified that he and Johnson spent the whole day together before the accident, driving to Crandall's mother's house in the morning and to some bars later in the day. They were drinking throughout the entire day, including while driving. Johnson did the driving earlier in the day, but Crandall drove when they left the last bar, and he was the driver at 10:20 p.m. that evening when the accident occurred. One of the sheriff deputies who responded to the accident testified that both Crandall and Johnson smelled of intoxicants at the scene and that he found two open cans of intoxicants in the car, still cold to the touch, which led him to believe both men were drinking alcohol in the vehicle.

¶ 9. Before Crandall testified, Johnson's attorney disclaimed any intention of asking Crandall about his criminal record, but said he did intend to ask Crandall if he had used cocaine that day. During his testimony, when Crandall denied having taken cocaine or prescription drugs during the twenty-four hours preceding the accident, Johnson's attorney asked, "[W]ere you charged with having done that?" Before Crandall had a chance to answer, Cintas 2 objected, and after a sidebar Johnson's attorney asked a new question. In both the opening and the closing instructions the jury

was instructed not to draw any inferences from unanswered questions. *See* Wis JI—Civil 50, 115.

¶ 10. The jury returned a verdict in favor of Johnson in the amount of $412,372, reduced to $329,897.60 due to Johnson's twenty percent contributory negligence. Cintas 2 moved for a new trial on the grounds that (1) the negligence instructions were wrong and (2) the unanswered question about a criminal charge against Crandall prejudiced the defense, but the circuit court rejected both arguments.

¶ 11. Johnson sought twelve percent interest on the judgment from the time of the 2008 offer of settlement until payment of the judgment, per Wis. Stat. § 807.01(4) (2007–08). Johnson argued that the applicable interest rate was the one in effect at the time of the offer rather than the lower rate in effect at the time of the verdict and judgment. The circuit court rejected Johnson's argument, concluding that the right to the interest was not "vested" until "the time judgment is entered" and that therefore the reduced interest rate under the current law was applicable.

¶ 12. Both parties appeal.

*Retroactivity of Reduced Rate of Interest Under Wis. Stat. § 807.01(4)*

■
¶ 13. We begin with the most important issue: whether the 2011 reduction in the interest rate on judgments that exceed offers of settlement under Wis. Stat. § 807.01(4) applies if a statutory offer of settlement was filed before the amendment took effect. Interpretation of a statute is a question of law reviewed independently in the appellate court. *Local 321, Int'l Ass'n of Firefighters v. City of Racine*, 2013 WI App 149, ¶ 6, 352 Wis. 2d 163, 841 N.W.2d 830.

¶ 14. While we usually presume the law has prospective application only, *id.*, ¶ 9, there are two exceptions. The first exception is if the text of the law itself, or necessary implication from the text, expresses the clear legislative intent to apply the law retroactively. *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 294, 588 N.W.2d 19 (1999). The second exception is for a statute that is remedial or procedural rather than substantive in effect; such statutes will be applied retroactively unless (1) the legislature clearly intended only prospective application or (2) retroactive application would upset vested rights. *Id.*

¶ 15. If our consideration of a new law leads us to conclude that the law applies retroactively, then we must go on to consider whether retroactive application is constitutional in the case at hand. *See Matthies v. Positive Safety Mfg. Co.*, 2001 WI 82, ¶ 25, 244 Wis. 2d 720, 628 N.W.2d 842. If retroactive legislation causes "substantial impairment of a vested right," it is unconstitutional unless justified by a significant and legitimate public interest. *Id.*, ¶ 31. We review the constitutionality of a law's retroactive effect de novo. *Id.*, ¶ 26 n.14.

¶ 16. With these guidelines in mind, we turn to Wis. Stat. § 807.01(4). The statute provides that when a party has filed a settlement offer "which is not accepted and the party recovers a judgment which is greater than or equal to the amount [of that offer], the party is entitled to interest . . . on the amount recovered." *Id.* The interest accrues "from the date of the offer of settlement until the amount is paid." *Id.*

¶ 17. At the time when Johnson made his offer of settlement, the applicable rate of interest was twelve percent. Wis. Stat. § 807.01(4) (2007–08). The 2011 amendment reduced the rate to one percent over prime. 2011 Wis. Act 69. That amendment's "initial applicability" section states that the new rate "first applies to an execution on a judgment entered on the effective date of this subsection," 2011 Wis. Act 69, § 4, which was December 2, 2011.[2]

¶ 18. Cintas 2 argues, and the circuit court accepted, that this amendment has no retroactive effect, because Johnson had no vested right to interest until he "recover[ed] a judgment." Wis. Stat. § 807.01(4). At the time when Johnson's entitlement to interest under § 807.01(4) arose, when he recovered a judgment exceeding his offer of settlement, the new law was in effect. So, the argument goes, the applicable interest rate was the rate under that new law: one percent over prime.

¶ 19. Cintas 2 also points out that the initial applicability section states the law "first applies to an execution on a judgment entered on [the law's] effective date." Again, Johnson's judgment was entered after that effective date of the law change, so, Cintas 2 argues, the new law applies.

¶ 20. Johnson does not dispute Cintas 2's interpretation of 2011 Wis. Act 69,[3] but argues that under

---

[2] 2011 Wis. Act 69 was published on December 1, 2011, and generally an act's effective date is the date after its publication. Wis. Stat. § 991.11.

[3] An amicus brief by the Wisconsin Association for Justice (WAJ) does offer another interpretation of the statute, relating to the fact that the law first applies to "execution on" a judgment on its effective date. 2011 Wis. Act 69, § 4. WAJ points out that "execution" of a judgment does not happen until

Wis. Stat. § 807.01(4), once a party files an offer of settlement, that party "is entitled" to the rate of interest specified in the statute, so long as it eventually obtains a judgment equal to or exceeding the offer of settlement. Johnson finds textual support for this view in three provisions of § 807.01(4): (1) the specification of a particular interest rate, (2) the statement that the plaintiff "is entitled" to the interest, and (3) the fact that the interest is to be calculated "from the date of the offer of settlement until the amount is paid."

¶ 21. Johnson also cites case law that characterizes the interest imposed by Wis. Stat. § 807.01(4) as a form of damages, either compensatory or punitive in nature. *See, e.g., Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Ins. Co.*, 152 Wis. 2d 7, 13, 447 N.W.2d 367 (Ct. App. 1989) (an award of interest under § 807.01(4) to a party who made an offer of settlement "compensate[s] that party for the use of its money during the ensuing litigation"); *S.A. Healy Co. v. Mil-*

---

the judgment has been "perfected" under Wis. Stat. § 806.06, *see* Wis. Stat. § 815.04(1)(a), when "taxation of costs" such as interest under Wis. Stat. § 807.01(4) occurs, *see* § 806.06(1)(c) and Wis. Stat. § 814.04(4). Because perfection happens as part of execution, however, we do not understand WAJ's interpretation and do not discuss it further.

Johnson seems to argue at one point that *Heritage Farms, Inc. v. Markel Ins. Co.*, 2012 WI 26, ¶ 55, 339 Wis. 2d 125, 810 N.W.2d 465, which held that prejudgment interest under Wis. Stat. § 814.04(4) should have been awarded at the twelve percent interest rate from the date of a jury verdict in 2006 until the date of the appellate decision, means that the law is not retroactive in effect, because the same act that reduced interest under Wis. Stat. § 807.01(4) also reduced interest under § 814.04(4). *See* 2011 Wis. Act 69, § 2. But in *Heritage Farms, Inc.*, the judgment was entered in 2009, two years before the reduced interest rates were enacted. *Heritage Farms, Inc.*, 339 Wis. 2d 125, ¶ 57. So that case is no help here.

*waukee Metro. Sewerage Dist.*, 60 F.3d 305, 312 (7th Cir. 1995) (stating that § 807.01(4) "give[s] the plaintiff . . . an extra dollop of relief, akin to punitive damages or attorneys' fees"). Because the law creates a substantive right, Johnson argues, a presumption of prospective application applies. Finally, Johnson argues, whether the statute is characterized as substantive or procedural, a retroactive reduction in the rate of interest that a party who has made an offer of settlement expects to receive under § 807.01(4) would be unconstitutional.

¶ 22. Cintas 2 counters that the fact that the interest "accounts for the time value of money, does not make it 'tantamount to damages' " but instead promotes settlement. This settlement mechanism, in Cintas 2's view, creates no "vested right" to the interest unless and until judgment is obtained. With respect to whether the retroactive effect of the law violates due process, Cintas 2 reiterates its view that there are no vested rights before a judgment exceeding the offer of settlement is obtained. Without any vested right, Cintas 2 argues, there can be no due process violation.

¶ 23. As the parties seem to agree, the applicability section of the amendment suggests that the new law applies to any judgment executed after the law's effective date, without consideration of whether an offer of settlement had already been made.

■

¶ 24. On the question of whether the law concerns a substantive right or a mere procedural rule, we conclude it is substantive. The rule is a special application of prejudgment interest. The idea behind prejudgment interest is to address the fact that a defendant faced with a legitimate claim may decide to fight it simply because the defendant can earn interest on the money that is owed to the plaintiff. *See S.A.*

*Healy Co.*, 60 F.3d at 308; *see also* 3 JACOB A. STEIN, STEIN ON PERSONAL INJURY DAMAGES § 17.58 (3d ed. 1997) (explaining that prejudgment interest is premised on the theory that "[w]hen the plaintiff has been tortiously denied the use of a sum certain due to the tortious act of the defendant, proper compensation should include interest," to fully compensate the plaintiff for his or her losses). It is similar to a rule allowing punitive damages for the prevailing party or shifting attorney fees to the losing party. *S.A. Healy Co.*, 60 F.3d at 312. It "imposes a sanction on defendants for turning down reasonable settlement demands" and deprives the defendant of the incentive to "earn interest on money that (it is subsequently determined) should really be the plaintiff's." *Id.* at 308.

¶ 25. The plaintiff's ability to earn interest on a judgment equal to or exceeding an offer of settlement incentivizes both parties to carefully evaluate the strength of the claim and the costs of the litigation. The statute puts both parties—the one making the offer and the one taking the risk of rejecting it—on notice, once the statutory offer of settlement is filed, that a particular rate of interest is applicable to any judgment equal to or greater than that offer. Both parties rely on that expectation regarding the rate of interest as the litigation proceeds.

¶ 26. Our conclusion would be the same if the tables were turned and the legislature attempted retroactively to impose an increased rate of interest under WIS. STAT. § 807.01(4). That would substantially impair the defendant's vested expectations concerning the likely scope of the damages in the litigation.

■■

¶ 27. Because literal application of the statute's initial applicability section would substantially impair

Johnson's vested right to interest on the judgment at twelve percent, we must consider whether that retroactive application is constitutional. *Matthies*, 244 Wis. 2d 720, ¶ 25. Although retroactive legislation enjoys a presumption of constitutionality that must be overcome by the challenger, "retroactive legislation presents unique constitutional problems in that it often unsettles important rights" and therefore "is viewed with some degree of suspicion." *Id.*, ¶ 26 (citation omitted). We must weigh whether the public interest served by retroactively applying the legislation outweighs the unfairness of substantially impairing private interests. *Id.*, ¶ 27.

¶ 28. Precedents establish that there was no public interest sufficient to outweigh the substantial impairment of laws that (1) retroactively applied a cap on certain medical malpractice damages, *see Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995); (2) retroactively increased limits on certain wrongful death damages, *see Neiman v. American Nat'l Prop. & Cas. Co.*, 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160; and (3) retroactively abrogated, in part, joint and several liability in a negligence claim, *see Matthies*, 244 Wis. 2d 270. Cintas 2 acknowledges these precedents but offers no argument concerning what public interests the amendment of WIS. STAT. § 807.01(4) serves that would outweigh the substantial impairment of individual private interests.[4] The act itself

---

[4] In response to these precedents, Cintas 2 simply argues that the cases are distinguishable because the right to interest under WIS. STAT. § 807.01(4) does not accrue until after judgment. We have already rejected that argument, and it is no help in the constitutional balancing analysis.

contains no such provision or explanation,[5] and we can think of nothing that distinguishes the public/private interests balance in this case from the balance determined in those precedents.

¶ 29. Having concluded that Wis. Stat. § 807.01 is substantive, not procedural, we further conclude that retroactively changing the interest rate that attaches to a statutory offer of settlement under § 807.01(4) would be unconstitutional. The applicable rate of interest under § 807.01(4) is the rate that was in effect on the date that the offer of settlement was filed.

*The Jury Was Instructed Properly About*
*Johnson's Contributory Negligence*

¶ 30. In its appeal, Cintas 2 argues first that the jury instructions on Johnson's contributory negligence and the special verdict form failed to fully and fairly inform the jury about applicable law. An error in jury instructions "warrants reversal . . . only if the error . . . . probably and not merely possibly misled the jury. If the overall meaning communicated by the instructions was a correct statement of the law, no grounds for reversal exist." *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis. 2d 6, 24, 531 N.W.2d 597 (1995) (citation omitted). Similarly, while a special verdict form must cover all material issues of ultimate fact, its precise

---

[5] In fact, as the amicus points out, the state senator offering the legislation that became 2011 Wis. Act 69 testified that it "would not be retroactive" and would apply to "the interest that attaches to judgments going forward." *Senate Committee on Judiciary, Utilities, Commerce, and Government Operations: Executive Session* (Oct. 26, 2011) (testimony of Sen. Rich Zipperer, Minutes 52:45 to 53:10), http://www.wiseye.org/Programming/VideoArchive/EventDetail. aspx?evhdid=5398.

contents are within the discretion of the circuit court. *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 12, 308 Wis. 2d 103, 746 N.W.2d 762. An appellate court "will not interfere with the special verdict submitted, so long as all material issues of fact are covered by appropriate questions." *Id.*

¶ 31. The instruction Cintas 2 thinks it was entitled to is WIS JI—CIVIL 1014, Negligent Entrustment. The comment to that instruction cites the relevant provision of the RESTATEMENT (SECOND) OF TORTS § 308 (1965), which provides as follows:

> It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Id.*; *see also Stehlik v. Rhoads*, 2002 WI 73, ¶ 19, 253 Wis. 2d 477, 645 N.W.2d 889 (acknowledging that Wisconsin has adopted this section of the Restatement). As the circuit court explained, this theory was developed for situations where the act of entrusting a thing to someone has caused injury to a third party. It does not apply to self-inflicted injuries. *See Stehlik*, 253 Wis. 2d 477, ¶¶ 19–24.

¶ 32. So the instructions and verdict form here correctly and completely presented the issue of Johnson's contributory negligence.[6] The instructions ex-

---

[6] Discussing the verdict form and instructions that are so key to Cintas 2's appeal is an apt moment to note that the table of contents in the appendix provided by Cintas 2 fails to indicate which numbered document in the appellate record is the source of each document in the appendix. The better and

plained the broad, general duty to exercise ordinary care for one's own safety at all times. They also explained that a person who has voluntarily consumed intoxicants is still responsible to exercise ordinary care for self-protection and that a passenger has a duty to exercise ordinary care for his or her own protection "before or upon entering an automobile." The verdict form asked the jury to determine whether Johnson "[a]t or immediately prior to the accident . . . was . . . negligent for his own safety" and to what degree. These instructions and verdict form properly informed the jury about how it should consider Johnson's failure to exercise ordinary care for his own protection. Asking the jury to separately consider Johnson's "passive" and "active" negligence could have been more confusing than helpful. There was no reversible error. *See Peplinski*, 193 Wis. 2d at 24.

### No Evidence Was Admitted About a Criminal Charge Against Crandall

██ ██

¶ 33. Lastly, Cintas 2 argues that it is entitled to a new trial because of the unanswered question Johnson asked Crandall about whether he was charged criminally for use of cocaine. Generally speaking, "an improper but unanswered question is not sufficient error" to warrant reversal. *State v. Edwardsen*, 146

---

more common practice is to indicate in the table of contents for the appendix which numbered document in the record is the source for each portion of the appendix (in addition, of course, to citing to the record within the brief). Including record citations in the table of contents to the appendix makes it easier for the court to verify that the appendix accurately reflects the record and to find relevant record documents in the record. We encourage all litigants to do so.

Wis. 2d 198, 210, 430 N.W.2d 604 (Ct. App. 1988). Because the question went unanswered after the objection and sidebar, no evidence about any charge against Crandall was ever admitted. Cintas 2 points out that the cocaine charge had no probative value and that the question could only serve to "inflame the jury and taint their opinion of Crandall." As the circuit court explained, however, the fact that "the testimony of both parties was essentially all we do is go out and drink all day, and we've done it on more than one occasion" may diminish the degree of prejudice that this unanswered question might have had in another case. Most importantly, whatever prejudice may have arisen was addressed by the standard jury instructions, which told the jury that objections and rulings made during trial should not concern them "at all," that they "should not draw any inference from an unanswered question," WIS JI—CIVIL 50, and that when an objection is made and the witness is not permitted to answer, "[d]o not draw any conclusion for either side," WIS JI—CIVIL 115.

¶ 34. We conclude that applying the 2011 amendment of WIS. STAT. § 807.01(4) to a case in which an offer of settlement was filed before the amendment took effect would substantially impair vested rights. We reverse and remand for application of the twelve percent interest rate that was in effect at the time when the offer of settlement here was filed. We affirm the judgment in all other respects.

¶ 35. Costs to the plaintiff-respondent-cross-appellant on the appeal and cross-appeal.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.