DAVID T. PROSSER, J.
¶ 187. (dissenting). For more than 150 years, the Wisconsin Legislature has sought to promote pretrial settlement and hold down costs in civil litigation.
¶ 188. The state's early statutes permitted a defendant to offer the plaintiff a specific judgment against the defendant. If the plaintiff accepted the offer and filed the appropriate papers, the plaintiff could have judgment against the defendant almost immediately. If the plaintiff declined the offer, however, and then failed to recover "a more favorable judgment," the plaintiff was required to pay the defendant's costs from the time of the offer. See, e.g., Wis. Stat. § 2789 (1878); Chi. & Nw. Ry. Co. v. Groh, 85 Wis. 641, 648, 55 N.W. 714 (1893).
¶ 189. In the 1970s the legislature strengthened the hand of plaintiffs in civil litigation. Wisconsin Stat. § 269.02(3) (1973) provided:
(3) Settlement. After issue is joined but at least 20 days before trial, the plaintiff may serve upon the *581 defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer or within 40 days after service of the notice of trial, whichever is later, he may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, he shall recover double the amount of the taxable costs.
(Emphasis added.)
¶ 190. In 1980 the legislature added a tough provision on prejudgment interest when either party declined to accept an offer of settlement from the other party:
807.01(4) If there is an offer of settlement by the party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the rate of 12% per annum on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).
See § 2, ch. 271, Laws of 1979. The 12 percent interest rate in Wis. Stat. § 807.01(4) was adopted at the same time the legislature increased interest rates from 7 percent to 12 percent per annum on a verdict and on execution upon judgment. See §§ 3-4, ch. 271, Laws of 1979, amending Wis. Stat. §§ 814.04(4) and 815.05(8).[1]
*582 ¶ 191. The language adopted in 1980 was the language in place on July 1, 2009, when Lands' End made an offer of settlement to the City of Dodgeville on the tax refund that Lands' End was seeking from the City's property tax assessment for 2008.
¶ 192. The issue presented in this case is whether the above-referenced language is applicable to Lands' End's claim, or whether new language adopted in 2011 nullified the effect of the older language for Lands' End.
i — i
¶ 193. This case is part of nearly a decade of continuous litigation between Lands' End and the City of Dodgeville over property tax assessments on six parcels of the corporation's land in the City. Much of the history is detailed in Lands' End's brief and in the record.
¶ 194. In 2005 the City of Dodgeville assessed the six parcels of land at $39,964,600 and imposed a tax of $1,169,665.73, which Lands' End paid under protest.
¶ 195. In 2006 the City assessed the six parcels at $47,332,300 and imposed a tax of $1,348,540.60, which Lands' End paid under protest.
¶ 196. Lands' End's claims for refunds of its alleged overpayments for 2005 and 2006 led to an 11-day trial before Iowa County Circuit Judge Edward E. Leineweber. On May 29, 2009, Judge Leineweber issued a 16-page memorandum decision concluding that the fair market value of Lands' End's property *583 was $25,000,000 in both 2005 and 2006. After considering various additional submissions, the court filed detailed findings of fact, conclusions of law, and judgment on September 1, 2009.
¶ 197. Lands' End also challenged the City's 2007 assessment and tax and its 2008 assessment and tax, which were based on the same appraisal for the City that Judge Leineweber pointedly criticized in his May 29, 2009 memorandum decision.
¶ 198. On July 1, 2009, Lands' End made its offer of settlement on the requested tax refund for 2008. This offer was made before the City appealed the September 1 judgment but after it had lost on the 2005 and 2006 assessments in the memorandum decision. Lands' End did not invoke Wis. Stat. § 807.01(4) until it responded to the 2008 property tax assessment.
¶ 199. On May 27, 2010, the court of appeals affirmed the decision of the circuit court on the 2005 and 2006 tax refunds. This court denied a petition for review on April 21, 2011. Consequently, Lands' End had a judgment, affirmed on appeal, about the invalidity of the City's 2005 and 2006 assessments 18 months before the legislature revised Wis. Stat. § 807.01(4).
¶ 200. Admittedly, the judgment applied to the 2005 and 2006 property tax assessments, not the 2008 assessment. However, the City upped the assessment in 2008 to $56,423,100, which the Board of Review reduced to $54,000,000 because of acknowledged errors. Upping the assessment to $54,000,000 for 2008 was unrealistic on its face because the City was relying on the same appraisal used in 2005 for property that had not changed.
¶ 201. This case is complicated by the timing of various court decisions. For example, in the 2008 case, Iowa County Circuit Judge William Dyke denied *584 Lands' End's motion for summary judgment about five weeks before the court of appeals affirmed Judge Leineweber's September 1, 2009 judgment. His ruling was not reversed until September 12, 2013 — a decision in which the court of appeals remanded the case to the circuit court "for entry of judgment in favor of Lands' End in the amount of $724,292.68, plus statutory interest and any other interest or costs to which Lands' End may be entitled."[2]
¶ 202. Ultimately, the City of Dodgeville had to refund substantial tax overpayments to Lands' End for 2005, 2006, 2007, and 2008. The City had to pay interest on all these refunds. The issue here is whether the City of Dodgeville is required to pay 12 percent per annum interest on the $724,292.68 refund on the 2008 taxes — from the date of Lands' End's offer of settlement (July 1, 2009) until the amount is paid.
II
¶ 203. The bill that created Wis. Stat. § 807.01(4) in 1980 was authored by State Senator William Bablitch, who soon thereafter became a member of this court. In 1999 Justice Bablitch had the opportunity to explain that the purpose of Wis. Stat. § 807.01 is "to encourage settlement and accordingly, secure just, speedy and inexpensive determinations of disputes." Prosser v. Leuck, 225 Wis. 2d 126, 140, 592 N.W.2d 178 (1999) (citing Schmidt v. Schmidt, 212 Wis. 2d 405, 412-13, 569 N.W.2d 74 (Ct. App. 1997); White v. Gen. Cas. Co. of Wis., 118 Wis. 2d 433, 438, 348 N.W.2d 614 (Ct. App. 1984)).
¶ 204. Previously, the court of appeals had asserted that" [t]he purpose of imposing costs and inter *585 est under subsecs. (3) and (4) [of § 807.01] is punitive." Blank v. USAA Prop. & Cas. Ins. Co., 200 Wis. 2d 270, 279, 546 N.W.2d 512 (Ct. App. 1996) (citing Gorman v. Wausau Ins. Cos., 175 Wis. 2d 320, 329, 499 N.W.2d 245 (Ct. App. 1993)).
¶ 205. Whether the purpose of double costs and 12 percent interest for parties who reject offers of settlement is truly "punitive" is open to debate. But this court has said:
The risk of being assessed the penalty of double costs under § 807.01(3) encourages parties to seriously assess their chances of winning a coverage or liability dispute. The party who rejects a settlement offer and forges ahead with litigation does so with the full knowledge of § 807.01(3) [and (4)] and that if not successful, they may be subject to double costs under § 807.01(3) [and 12 percent interest "from the date of the offer of settlement until the amount is paid"].
Prosser, 225 Wis. 2d at 147 (emphasis added).
HH 1 — I I — i
¶ 206. To determine whether Wis. Stat. § 807.01(4) is still applicable to the partial refund of Lands' End's 2008 property tax, we must engage in statutory interpretation, applying the principles in State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.
¶ 207. In 2008, Wis. Stat. § 807.01 was entitled "Settlement offers." It had five subsections. Subsection (3) contained the provision in which "the plaintiff shall recover double the amount of taxable costs." Subsection (4) read:
If there is an offer of settlement by a party under this section which is not accepted and the party *586 recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8).
Wis. Stat. § 807.01(4) (2007-08).
¶ 208. Subsection (5) read: "Subsections (1) to (4) apply to offers which may be made by any party to any other party who demands a judgment or setoff against the offering party." Wis. Stat. § 807.01(5) (2007-08).
¶ 209. Three conditions must exist under Wis. Stat. § 807.01(4) (2007-08) for a party to qualify for 12 percent interest per annum "on the amount recovered." First, the party makes "an offer of settlement" to another party "under this section." Second, the "offer of settlement" "is not accepted" by the other party "within 10 days after receipt of the offer."[3] Third, the offering party recovers "a judgment which is greater than or equal to the amount specified in the offer of settlement."
¶ 210. If these three conditions are satisfied "the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid." These conditions and consequences are examined in turn.
A
¶ 211. Subsections (1), (2), and (3) of Wis. Stat. § 807.01 refer to "a written offer of settlement." These written offers of settlement are "served" on the other *587 party. The party making an offer of settlement must "do so in clear and unambiguous terms," Ritt v. Dental Care Associates, S.C., 199 Wis. 2d 48, 76, 543 N.W.2d 852 (Ct. App. 1995), so that the offeree may "fully and fairly evaluate the offer from his or her own independent perspective," id. at 75 (citing Testa v. Farmers Ins. Exch., 164 Wis. 2d 296, 302, 474 N.W.2d 776 (Ct. App. 1991)).
¶ 212. There is no dispute that this condition was satisfied by Lands' End.
B
f 213. There also is no dispute that Lands' End's offer of settlement was not accepted. The City opposed Lands' End's motion for summary judgment, and the case was litigated for several years.
C
¶ 214. Finally, Lands' End recovered a judgment against the City of Dodgeville after winning the 2013 appeal. Moreover, subsection (4), applied to offers made by any party to any other party who demands a judgment or setoff against the offering party. Wis. Stat. § 807.01(5). Lands' End demanded a judgment and ultimately received a judgment. The statute in 2009 and 2010 imposed no timing requirement for the judgment. Consequently, Lands' End satisfied every condition in the statute.
¶ 215. If a party satisfies all three conditions, "the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid." (Emphasis added.)
*588 ¶ 216. The words of a statute have meaning. To say that a party is "entitled" to something means that the party has been granted a legal right to or qualifies for that thing. See Entitle, Black's Law Dictionary 649 (10th ed. 2014); see also id. (defining "entitlement" as an "absolute right to a (usu. Monetary) benefit, such as social security, granted immediately upon meeting a legal requirement"); The American Heritage Dictionary of the English Language 615 (3d ed. 1992) ("To furnish with a right or claim to something . . . ."). Two cases by the Supreme Court of the United States in recent decades also defined "entitled" in terms of qualifying for a right or benefit, and both cases cited to an earlier edition of Black's in their analyses. See Ingalls Shipbuilding, Inc. v. Director, Office of Worker's Comp. Programs, 519 U.S. 248, 255-56 (1997) ("[T]he ordinary meaning of the word 'entitle' indicates that the 'person entitled to compensation' [in 33 U.S.C. § 933(g)(1)] must at the very least be qualified to receive compensation."); Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992) ("Both in legal and general usage, the normal meaning of entitlement includes a right or benefit for which a person qualifies, and it does not depend upon whether the right has been acknowledged or adjudicated. It means only that the person satisfies the prerequisites attached to the right."); see also Entitle, Black's Law Dictionary 532 (6th ed. 1990) ("To qualify for; to furnish with proper grounds for seeking or claiming.").
¶ 217. The "right" created by the statute was recognized implicitly in Gorman, 175 Wis. 2d at 329, where the court said: "Nothing in sec. 807.01, Stats., requires a party to file a motion in order to recover costs. Rather, this statute mandates the court to impose costs and interest when the defendant rejects a *589 valid offer of settlement and the plaintiff recovers a greater judgment." (Emphasis added.) The Prosser court stated that "the plain language [of the statute] provides that interest accrues throughout the litigation." Prosser, 225 Wis. 2d at 152.
¶ 218. Wisconsin Stat. § 807.01(4) then specifies what "the party" is "entitled" to — namely, (1) "interest at the annual rate of 12%," (2) "on the amount recovered," and (3) "from the date of the offer of settlement until the amount is paid." Subsection (4), of § 807.01 is different from a statute that employs a broad term like "compensation." Subsection (4) is very specific in directing that it is interest at a stated rate and for a stated period of time to which a prevailing party is entitled. In Upthegrove Hardware, Inc. v. Pennsylvania Lumbermans Insurance Co., 152 Wis. 2d 7, 13, 447 N.W.2d 367 (Ct. App. 1989), the court of appeals summed up the law when it said that the prevailing party "is seen as having 'recovered' the amount awarded in the judgment on the date of the settlement offer." (Emphasis added.)
IV
f 219. In the 1980 legislation, two statutes, Wis. Stat. §§ 814.04(4) and 815.05(8), were amended to increase the rate of interest from 7 percent to 12 percent. Ch. 271, Laws of 1979. Statutory interest rates needed to be raised at that time so that parties did not have an incentive to delay payment. The 12 percent interest rate included in Wis. Stat. § 807.01(4) corresponded with the other changes. The legislature made clear that the change in rates was prospective when it said that "the statutes apply only to actions commenced on or after the effective date of this act."
*590 ¶ 220. Over the next 30-plus years, interest rates fell, but the 12 percent rate in the statutes was preserved because it supported the objective of the statutes to encourage pretrial settlement and prompt payment of judgments. When interest rates in the three statutes were reduced in 2011, the country had historically low interest rates and adjustments may have appeared necessary. But there is no evidence that the legislature intended to undermine the basic objectives of Wis. Stat. § 807.01(4).
¶ 221. In her dissenting opinion in Prosser v. Leuck, Justice Ann Walsh Bradley observed:
There can be little doubt that Wis. Stat. § 807.01 exists to encourage parties to settle their cases rather than take them to trial. Beacon Bowl, Inc. v. Wisconsin Elec. Power Co., 176 Wis. 2d 740, 501 N.W.2d 788 (1993); DeMars v. LaPour, 123 Wis. 2d 366, 373, 366 N.W.2d 891 (1985). To the extent that § 807.01 forces parties to carefully analyze their realistic chances of liability or recovery and reevaluate the merits of taking their case to trial, the statute serves an important purpose. Settlement is to be encouraged rather than discouraged in the law.
Prosser, 225 Wis. 2d at 155 (Ann Walsh Bradley, J., dissenting).
f 222. In 2009, Wis. Stat. § 807.01(4) gave notice to all litigants that its provisions would affect conduct that had not yet occurred. Therefore, the party to whom an offer of settlement was made had notice of the consequences that would follow if a judgment in a greater amount were recovered.
¶ 223. Conversely, parties who made statutory offers of settlement relied on the entitlement created by the statute. Wisconsin Stat. § 801.01 created clear *591 expectations that reasonable people could and did rely on as they proceeded in litigation.
¶ 224. Retroactive application of the 2011 changes in the law undermines the entitlement to 12 percent interest set out in the statute. It creates an incentive to extend litigation and thereby delay payment. The City is effectively being rewarded for overtaxing Lands' End and for stringing out the litigation that followed.[4] It should be noted that Lands' End would have been required to pay 1 percent interest every month, plus potential penalties, if it had not timely paid the 2008 tax and if it had not eventually succeeded in court. Wis. Stat. § 74.47. It is hard to believe the legislature intended the inequitable result of retroactively changing the interest rates for offers of settlement made long before the statutory changes but not changing the rate for taxpayers who owe additional property taxes.
¶ 225. These considerations are the foundation of the court of appeals decision in Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515, which concluded that the retroactive application of the 2011 changes was unconstitutional. I agree with the court's comprehensive, well-written opinion and would affirm its determination.[5] In over *592 ruling the Johnson case and affirming the circuit court's ruling in the present case, this court is likely undermining the reasonable expectations of multiple other parties who made offers of settlement in conformity with the statute.
V
| 226. Although I fully support the court of appeals' decision in Johnson, the lead opinion in this case makes it necessary to address the lead opinion's conclusion that Lands' End was required to obtain a legally enforceable "judgment" before the 2011 change in the law. The lead opinion states:
Lands' End did not acquire a legally enforceable right to recover interest until it recovered a judgment. ... Changing the interest rate in Wis. Stat. § 807.01(4) simply alter[ed] the legal consequence of events not yet completed. Before Lands' End recovered a judgment, its right to interest was inchoate.
Lead op., ¶ 72. This holding penalizes Lands' End not only because it abandons the governing principles of the *593 statute but also because it rests on the timing of the circuit court's mistaken ruling on summary judgment.
¶ 227. Clearly, Lands' End should have received a favorable judgment on its 2008 assessment before the amendment to Wis. Stat. § 807.01(4) in December 2011. Unfortunately, the actual judgment did not come until after the circuit court's decision was reversed. However, before the circuit court's mistaken ruling, Lands' End had been successful in other litigation against the City on the same property. The legal foundation had already been built for Lands' End's eventual success on its suits on the 2008 assessment as well as the 2007 assessment. The Iowa County Circuit Court had already determined that the City's assessments for 2005 and 2006 were incorrect, and the City had conceded that there was no material change in the value of the property between 2006 and 2008. See Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶ 23 (Wis. Ct. App. Sept. 12, 2013); see also Lands Ends, Inc. v. City of Dodgeville, Nos. 2013AP1490, 2013AP1491, and 2013AP1492, unpublished slip op., ¶ 17 (Wis. Ct. App. May 8, 2014).[6]
*594 ¶ 228. The lead opinion concludes that Lands' End's right to the 12 percent interest rate was "contingent on a subsequent determination by a court." Lead op., ¶ 77. But the lead opinion forces Lands' End to bear the burden of the right court making the wrong determination at a critical time. Had the same court decided the case six weeks later, the result would have been different.
f 229. For the foregoing reasons, I respectfully dissent.
f 230. I am authorized to state that Chief Justice PATIENCE DRAKE ROGGENSACK joins this dissent.

 Section 5 of Chapter 271 read: "Applicability. The treatment or creation of sections 807.01(4), 814.04(4) and 815.05(8) *582 of the statutes apply only to actions commenced on or after the effective date of this act." This provision made the interest increases entirely prospective.

 Curiously, the court of appeals did not decide Lands' End's 2007 tax refund claim until May 8, 2014.

 The time limit is referenced in the three preceding subsections of the statute. See Wis. Stat. §§ 807.01(1), (2), and (3).

 In S.A. Healy Co. v. Milwaukee Metropolitan Sewerage District, 60 F.3d 305, 308 (7th Cir. 1995), Judge Posner skillfully analyzed one problem that Wis. Stat. § 807.01(4) sought to address:" [Djelay in accepting the plaintiffs demand allows the defendant to earn interest on money that (it is subsequently determined) should really be the plaintiffs. The award of interest from the date of the settlement demand deprives the defendant of this incentive to reject rightful demands."

 Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515, is consistent with court decisions *592 in other states. See, e.g., Dubois v. State Farm Ins. Co., 571 So. 2d 201, 207 (La. Ct. App. 1990) (concluding that amendment to statutory interest rate was "substantive law" that "applie[d] only to recovery in accidents occurring after its passage"), approved by Socorro v. City of New Orleans, 579 So. 2d 931, 944 (La. 1991); Herring v. Golden State. Mut. Life Ins. Co., 318 N.W.2d 641, 646 (Mich. Ct. App. 1982) (applying statute amending interest rate was improper where "the action was filed over a year prior to the effective date of the statute" and "the controversy arose before the statute was enacted").
For further insights regarding jurisdictions that decline to give retroactive effect to changes in interest rates, see generally Diane M. Allen, Annotation, Retrospective Application and Effect of State Statute or Rule Allowing Interest or Changing Rate of Interest on Judgments or Verdicts, 41 A.L.R. 4th 694, §§7, 11 (1985 & Supp. June 2015).

 As explained by the court of appeals,
[T]he City argues that issue preclusion does not apply in this case .... [T]he flaw in the City's issue preclusion argument is that the City miscasts the "issue" to which issue preclusion applies. The "issue" is not the proper 2008 assessed value of Lands' End's property. Rather, we determine here that issue preclusion applied only to the "issue" of the correct 2006 assessment. The resolution of that issue through the application of issue preclusion does not, by itself, establish the proper 2008 assessed value. Rather, it is the combination of issue preclusion and a new undisputed fact in the present case that persuades us that Lands' End is entitled to summary judgment. The new undisputed fact is that the value of the subject property did not materially change between 2006 and 2008.
*594 Giving preclusive effect to Judge Leineweber's finding that the 2006 value of the property was $25,000,000, and combining that finding with the undisputed fact in this case that the value of the property essentially stayed the same, leads us to conclude that the value of the property in 2008 must be $25,000,000. Because there is no genuine dispute that the 2008 value of the property is $25,000,000, we conclude that Lands' End is entitled to judgment as a matter of law.
Lands' End, Inc. v. City of Dodgeville, No. 2010AP1185, unpublished slip op., ¶¶ 10, 29 (Wis. Ct. App. Sept. 12, 2013).